**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **JTH WIND LLC** | § | |
| ***Plaintiff,*** | § | |
| **vs.** | § | **CIVIL ACTION NO. 1:26-cv-236** |
| **PACIFIC INDEMNITY COMPANY** | § | |
| **And** | § | |
| **ROSENDIN ELECTRIC, INC** | § | |
| ***Defendants.*** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, JTH Wind LLC ("JTH Wind"), by and through its undersigned counsel, brings this action against Defendants, Pacific Indemnity Company ("Pacific") and Rosendin Electric, Inc. ("Rosendin") (collectively "Defendants") and alleges as follows:

## I. NATURE OF THE SUIT

1. This is a civil action to foreclose on a Surety Bond To Indemnify Against Lien.

2. The action arises out of Subcontract for JTH Wind to furnish labor, equipment, and materials (if necessary) for Single Circuit Trench installation and backfill, including pulling of cable through directional bores for a construction project located in Callahan County Texas, an Affidavit of Mechanic's Lien filed by JTH Wind in Callahan County, Texas, and the Surety Bond To Indemnify Against Lien filed by Pacific in Callahan County, Texas.

3. This action is being made as a direct action on the Surety Bond To Indemnify Against Lien to foreclose JTH Wind's Mechanic's Lien claim for unpaid funds owed to JTH Wind for unpaid contract progress payments, unpaid retainage, and uncompensated costs of changes to JTH Wind's work on the construction project. Rosendin, as Principal on the Surety Bond to Indemnify Against Lien, is joined in this action.

## II. PARTIES

4. JTH Wind incorporates by reference the allegations of the preceding paragraphs.

5. JTH Wind is an Iowa limited liability company, authorized to do business in Texas, with its headquarters and principal place of business located at 1400 S. 4th St., Forest City, IA 50436.

6. Pacific is a Delaware corporation authorized to do business in Texas, with its principal place of business located at 202B Hall's Mill Road, Whitehouse Station, NJ 08889. Pacific may be served with process by and through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas TX 75201.

7. Rosendin is a California corporation with its residence and principal place of business at 8809 Mabury Rd, San Jose, CA 95133. Defendant is authorized to do business in Texas and may be served with process by and through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas TX 75201.

8. All members of JTH Wind are residents of Iowa.

## III. JURSIDICTION AND VENUE

9. JTH Wind incorporates by reference the allegations of the preceding paragraphs.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this judicial district pursuant to (i) 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district; and (ii) because Defendants regularly and systematically conduct business in this judicial district including, without limitation, the transactions at issue in this action.

12. Pacific and Rosendin are subject to this Court's personal jurisdiction and are deemed to reside in this judicial district pursuant to 28 U.S.C. §1391(c)(2) and (d). JTH Wind's claims arise out of work performed on a construction project located in Callahan County, Texas, for which Rosendin was the original contractor, and the Surety Bond To Indemnify Against Lien filed by Pacific in Dallas County, Texas in response to JTH Wind's Mechanic's Lien filed in Callahan County, Texas.

## IV. BACKGROUND FACTUAL ALLEGATIONS

13. JTH Wind incorporates by reference the allegations of the preceding paragraphs.

14. Rosendin, as an original contractor (the "Contractor") entered into a Lump Sum Engineering, Procurement, and Construction Agreement (the "Contract") dated November 30, 2023, with Enbridge Solar (Sequoia I), LLC f/k/a Enbridge Solar (Eldorado), LLC, a Delaware company (the "Owner"), for construction of a 400 MW utility-scale solar generation facility to be located in Callahan County, Texas (the "Project"). *See* the Contract attached hereto as Exhibit 1.

15. Rosendin, as Contractor, entered into a Long Form Subcontract Agreement with JTH Wind dated April 29, 2024 (the "Subcontract Agreement" or "Subcontract"), for JTH Wind

to furnish labor, equipment, and materials (if necessary) for Single Circuit Trench installation and backfill, including pulling of cable through directional bores. *See* Subcontract Agreement attached hereto as Exhibit 2.

16. The Subcontract established July 17, 2024 as JTH Wind's Target Mobilization Date and July 29, 2024 as JTH Wind's Target Start Date for performance of Work on the Project. The planned duration of JTH Wind's work was 12 weeks, resulting in an anticipated substantial completion of JTH Wind's work by the end of October 2024.

18. From the start, JTH Wind's work on the Project was delayed, disrupted, hindered, and interfered with, all of which resulted in excusable and compensable delays to the Project and the owing of additional money to JTH Wind. Some of these events and conditions were, among others, lack of required permits by Rosendin and/or Owner; re-engineering and re-design of the Project because of underground pipelines that supposedly were inoperable but were actually in use; Owner changes in wire size, causing some installed wire to have to be removed, after which the changed wired was installed; Rosendin directing JTH Wind to jump back and forth between this Project and the Brazoria I Solar, LLC project; and excessive amount of rock cutting compared to the estimated amount represented to JTH Wind in the Subcontract documents.

19. As a result of the events and conditions described above, JTH Wind was only able to perform approximately 2 weeks' worth of work through January 2025, which was more than two months after the planned substantial completion date in October 2024 for all of JTH Wind's work on the Project.

20. Even after January 2025, the excessive rock cutting, among other things, continued to delay, disrupt, hinder and interfere with JTH Wind's completion progress throughout the time JTH Wind performed its work on the Project.

21. At the time JTH Wind executed its Subcontract, Rosendin was aware that JTH Wind had a separate contractual commitment to perform work on a project in Colorado, starting in June 2025. In January 2025, Rosendin acknowledged to JTH Wind that the delays and disruptions to JTH Wind's work were not JTH Wind's fault and Rosendin agreed that when the time came for JTH Wind to mobilize to the project in Colorado, Rosendin would release JTH Wind from any obligation to complete its subcontract work remaining at such time; and that Rosendin would hire a replacement contractor, at no cost to JTH Wind, to complete the remaining JTH Wind subcontract work.

22. The 1500 MCM wire cable to be installed by JTH Wind was furnished by Rosendin. The wire cable was delivered to the Project by truck, wound on large reel spools. During JTH Wind's inspection of the wire cable upon delivery, JTH Wind discovered damage to the exterior of the wire cable jacket. This damage was reported to Rosendin, who instructed JTH Wind to install the wire cable despite the damage to the jackets.

23. In June 2025, a dispute arose between JTH Wind and Rosendin regarding performance failure of the installed wire cable and whether such failures were attributable to improper installation by JTH Wind or caused by the damage to the wire cable that was discovered upon delivery of the wire cable to the Project.

24. On June 17, 2025, Rosendin issued a written Notice to Cure letter to JTH Wind regarding the removal and replacement of the damaged cable. The next day, June 18, 2025, JTH Wind transmitted to Rosendin a written response to the Notice to Cure, including a Written Plan of Corrective Action. The JTH Wind response also provided notice that it disputed responsibility for the damage to the wire cable and that JTH Wind would be seeking additional

compensation and a time extension for the cost and schedule impacts of performing the corrective work demanded in the Notice to Cure.

25. The same day JTH Wind submitted its response to the Notice to Cure, on June 18, 2025, JTH Wind transmitted separate correspondence to Rosendin, seeking a contractual release from any further obligation to perform JTH Wind's remaining work on the Project (installation of approximately 30,000 lineal feet single circuit trench wire cable). JTH Wind reminded Rosendin of the agreement reached in January 2025, and notified Rosendin that the start date for JTH Wind's prior performance obligations for the project in Colorado had slipped from June to July 2025. JTH Wind requested that Rosendin proceed with the agreed plan to transfer JTH Wind's remaining work to a replacement contractor.

26. On June 23, 2025, Rosendin informed JTH Wind that Rosendin was "going to perform a deductive Change Order, in order to capture the scope, actual unit footage, and value of the trench path that you will end with, prior to demobilization. … There will be separate discussions, regarding the cable damage." When JTH Wind requested an update from Rosendin on June 24, 2025 so that JTH Wind could commence demobilization that week, Rosendin responded the same day, stating "We are prepared for you to demobilize, whenever you choose to. … That said, we will plan accordingly, if this is the timeline JTH needs to keep for other obligations."

27. On July 2, 2025, Rosendin transmitted to JTH Wind a "Notice of Default – Refusal to Cure" letter, asserting that JTH Wind's cure period had expired, JTH Wind had demobilized from the Project site, and that no progress had been made to commence the repairs addressed in JTH Wind's Response to the Notice to Cure.

28. On July 11, 2025, nine days after issuing the Notice of Default – Refusal to Cure letter, Rosendin notified JTH Wind that its Written Plan of Corrective Action was unacceptable. That same day, JTH Wind responded, asking Rosendin whether JTH Wind would be allowed to resume work at the Project site on July 18, 2025 to commence replacement of the damaged 1500 MCM cables. JTH Wind also pointed out that JTH Wind still had equipment at the Project site to perform such work. Rosendin replied later that day, informing JTH Wind that Rosendin had already replaced JTH Wind's manpower on the Project and that Rosendin would start performing JTH Wind's work the following Monday, July 14, 2025. Rosendin concluded by stating "We will review and advise on any next steps that include JTH, in a timely manner."

29. On July 15, 2025, after receiving no further contact from Rosendin after July 11, 2025, JTH Wind sent a follow-up communication to Rosendin, complaining of the lack of further contact and inquiring as to whether or not Rosendin wanted JTH Wind to return to the Project site to work on the Project. Rosendin responded the same day, stating that it had "engaged additional resources to perform JTH Wind's remaining scope of work" and that "Rosendin will review internally and coordinate on next steps, in all aspects."

30. On July 29, 2025, JTH Wind transmitted a detail letter to Rosendin, outlining JTH Wind's position on the various adverse actions being taken by Rosendin against JTH Wind. The detailed position letter re-examined the dispute regarding the damaged wire cable and Rosendin's agreement to allow JTH Wind to demobilize the Project site to satisfy its prior commitment for a project in Colorado. JTH Wind also expressed its belief that the Owner and/or Rosendin had insurance (Builder's Risk Insurance) that might cover the damage to the wire cable, including the costs to remove and replace it. JTH renewed a previous request to Rosendin for JTH Wind to be provided with copies of any potentially applicable insurance policies and all

insurance-related communications by Rosendin regarding the damaged wire cable. The July 29, 2025 letter concluded by making demand for payment of JTH Wind's two unpaid payment applications (Nos. 7 and 8), as well as payment of its retention, which collectively totaled $1,128,704.89.

31. After receipt of JTH Wind's July 29, 2025 correspondence, Rosendin has continued to withhold any further payment from JTH Wind for work performed on the Project. On October 9, 2025, JTH Wind filed a Corrected Copy of an Affidavit of Mechanic's Lien ("JTH Wind's Lien") in the Property Records of Callahan County, Texas, claiming that after allowing all just credits, offsets, and payments, the amount of $1,128,704.89 remains unpaid and is due JTH Wind. *See* Corrected Copy of Affidavit of Mechanic's Lien attached hereto as Exhibit 3.

32. On November 6, 2025, a Surety Bond to Indemnify Against Lien, Bond Number K4209058A (the "Bond"), with Rosendin as Principal and Pacific as Surety, was filed in the Property Records of Callahan County, Texas in accordance with the provisions of Sections 53.171 – 53.175 of the Texas Property Code. *See* Bond Lien to Indemnify Against Lien attached hereto as Exhibit 4.

33. Pursuant to the provisions of Section 53.172 of the Texas Property Code, the Bond states that Rosendin and Pacific "firmly bind themselves, their successors and assigns, jointly and severally, to pay JTH WIND LLC (herein "Obligee") claimant of the above described lien in the amount of One Million Six Hundred Ninety Three Thousand Fifty Seven and 34/100 Dollars ($1,693,057.34) which sum is the greater of 1 1/2 times the amount of the liens or the sum of $40,000.00 and the amount of the liens as required by Section 53.172(3) of the Texas Property Code."

## V. CAUSES OF ACTION

### COUNT ONE – ACTION ON THE BOND TO INDEMNIFY AGAINST LIEN

34. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

35. Section 53.175 of the Texas Property Code states that a party making or holding a lien claim may not sue on the bond later than one year after the date on which the notice is served [as required by Section 53.173] or after the date on which the underlying lien claim becomes unenforceable under Section 53.158.

36. Section 53.158(a) of the Texas Property Code requires a suit to foreclose lien to be brough not later than the first anniversary of the last day a claimant may file the lien affidavit under Section 53.052. Since JTH Wind last performed work on the Project in June 2025, the last day JTH Wind could have timely filed its lien affidavit was October 15, 2025. The first anniversary of such date is October 15, 2026.

37. Notice of the Bond was served on JTH Wind via certified mail, return receipt requested on November 6, 2025. One year after the date JTH Wind was served notice of the bond is November 6, 2025.

38. JTH Wind timely brings this action on the Bond, seeking payment from Rosendin and Pacific of $1,128,704.89, the amount that JTH Wind would have been entitled to recover if its claim had been proved to be a valid and enforceable lien on the property, as well as interest and attorneys' fees as allowed by law.

### COUNT TWO – VIOLATION OF TEXAS PROMPT PAYMENT ACT

39. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

40. The Texas Prompt Payment Act for private works projects, Chapter 28 of the Texas Property Code, provides for the payment of interest to contractors and subcontractors on overdue payments.

41. Section 28.004 of the Texas Prompt Payment Act states:

> Sec. 28.004. INTEREST ON OVERDUE PAYMENT.
>
> (a) An unpaid amount required under this chapter begins to accrue interest on the day after the date on which the payment becomes due.
> (b) An unpaid amount bears interest at the rate of 1-1/2 percent each month.
> (c) Interest on an unpaid amount stops accruing under this section on the earlier of:
>
> (1) the date of delivery;
> (2) the date of mailing, if payment is mailed and delivery occurs within three days; or
> (3) the date a judgment is entered in an action brought under this chapter.

42. A contractor is statutorily required to promptly pay its subcontractors proportionately from any amount paid by an owner attributable to work performed under a subcontract. See TEX. PROP. CODE 28.002.

43. Upon information and belief, the Owner of the property against which JTH Wind's Affidavit of Lien was filed has paid Rosendin for the work that JTH Wind performed on the Project.

44. Rosendin has failed to pay to JTH Wind the remaining amounts owed to JTH Wind for the work JTH Wind performed on the Project.

44. Rosendin does not have a good faith dispute, as described in Section 28.003(b) of the Texas Property Code, to excuse its failure to promptly pay JTH Wind the amounts that Rosendin has withheld for JTH Wind's completed Subcontract work.

46. Rosendin has violated the Texas Prompt Payment Act.

47. JTH Wind is entitled to the unpaid amounts which were claimed in JTH Wind's Lien, plus interest to be calculated at the time of judgment.

**COUNT THREE – ATTORNEYS' FEES**

48. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

49. Section 53.156 of the Texas Property Code states that in any proceeding to enforce a claim against a bond issued under Subchapter H of Chapter 53 of the Texas Property Code, "the court shall award costs and reasonable attorney's fees as are equitable and just."

50. Plaintiff has brought this action to enforce its claim against the Bond, which was issued under the provisions of Subchapter H of Chapter 53 of the Texas Property Code.

51. Section 38.001(b)(8) of the Texas Civil Practice & Remedies Code allows for the recovery of reasonable attorney's fees for a claim based on an oral or written contract.

52. The Subcontract between JTH Wind and Rosendin is a written contract. Additionally, the Bond issued by Pacific is a written contract between Pacific as Surety and Rosendin as Principal and JTH Wind as the Obligee (beneficiary), wherein Pacific and Rosendin have contractually committed that they "shall pay to JTH Wind Steel Company, its successors and assigns, the amount that JTH Wind Steel Company would have been entitled to recover if its claim had been proved to be a valid and enforceable lien on the property."

53. As a result of JTH Wind remaining unpaid for the work JTH Wind performed on the Project since June 2025, Plaintiff has been required to retain the below counsel to represent and prosecute its claims.

54. Plaintiff is entitled to recovery of reasonable attorneys' fees in an amount that will be proven at trial.

## VI. <u>CONDITIONS PRECEDENT</u>

55. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

56. All conditions precedent to Plaintiff's claims for relief have been performed, have occurred, or have been waived.

## VII. JURY DEMAND

57. Plaintiff hereby requests a trial by jury on all issues.

## VIII. PRAYER FOR RELIEF

58. WHEREFORE, Plaintiff JTH Wind LLC respectfully requests that the Court enter judgment in its favor against Rosendin Construction, LLC and Pacific Indemnity Company by entry of an order that:

a. Awards Plaintiff JTH Wind LLC all actual damages, and all other relief, at law or in equity, to which it is entitled;

b. Awards Plaintiff JTH Wind LLC recovery from Rosendin Construction, LLC and Pacific Indemnity Company, under the Bond, the amount JTH Wind LLC would have been entitled to recover if its claim had been proved to be a valid and enforceable lien on the property;

c. Awards Plaintiff JTH Wind LLC all costs and expenses incurred in connection with this action, including its reasonable attorneys' fees;

d. Awards Plaintiff JTH Wind LLC pre-judgment and post-judgment interest to the fullest extent allowed by law; and,

e. Grants Plaintiff JTH Wind LLC such other and further relief as this Court deems just, equitable, and proper.

DATED this 14th day of May, 2026.

Respectfully Submitted,

By: */s/ Terry L. Salazar*

**Terry L. Salazar**
Texas State Bar No. 17527500
Email: tsalazar@qslwm.com
**Quilling Selander Lownds Winslett & Moser, PC**
2200 Ross Ave., Suite 2400
Dallas, TX 75201
214-880-1857 (Direct Dial Phone)
214-871-2111 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**
**JTH WIND LLC**